## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ALISHA SIMMONS, et al. ) | CASE NO.: 1:17-cv-01573-DCN |
| ) | |
| Plaintiff, ) | JUDGE: Donald C. Nugent |
| v. ) | |
| ) | **BRIEF IN OPPOSITION TO** |
| WIRELESS EXCHANGE INTERNATIONAL ) | **PLAINTIFF'S MOTION FOR** |
| 4, INC., et al. ) | **SUMMARY JUDGEMENT** |
| ) | |
| Defendant. | |

Now comes Defendants, by and through the undersigned counsel and hereby respectfully request this Honorable Court to issue an Order denying Plaintiffs' Motion for Summary Judgment. Namely, Plaintiff cannot show any proof that Jerry Phillips ever worked for Defendants, Defendants' businesses fall within the retail and service establishment exemption, and Defendants acted in good faith. The reasons for this request are more fully explained in the attached memorandum.

Respectfully submitted,

 /s/ Wesley A. Johnston

Wesley A. Johnston (0061166)
910 IMG Blng.
1360 East Ninth Street
Cleveland, OH 44114
216-771-8420
wesleyajohnston@gmail.com

**CERTIFICATE OF SERVICCE**

  I hereby certify that on the 1ST Day of July, 2019 the forgoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

          __/s/ Wesley A. Johnston__
          Wesley A. Johnston (0061166)

### I.     INTRODUCTION

Defendants Wireless Exchange International 4, Inc., et al. ("Wireless") are Ohio Corporations who were in the business of retail sales of cellular phones and the monthly cellular plans available from Cricket Wireless.  See Affidavit of Omar Salti (hereinafter referenced as "Affidavit").  Defendant Wireless does not dispute that it employed Alisha Simmons, Alphonso Durden and Alexandrea Young while it operated.  However, Wireless denies that Jerry Phillips was ever employed.  Wireless has provided detailed payroll records to counsel for Plaintiff regarding Simmons, Durden and Young; however Wireless has never employed a Jerry Phillips and counsel for Plaintiff is unable to provide any documentation to support that Phillips was ever employed.

Summary Judgment is not appropriate at this time for the following reasons:  Plaintiff has provided no proof that Defendant Jerry Phillips was ever employed by Wireless (no check, W2, or any other form of communication).  Further Defendant Wireless is exempt from penalty and/or liquidated damages as it acted in Good Faith and the employees who did work for Wireless (Plaintiff Alisha Simmons, Alphonso Durden and Alexandia Young) fall within the retail or service establishment exemption of the FLSA.

### II.    SUMMARY OF LAW

#### A.  **SUMMARY JUDGMENT STANDARD**

Summary judgment is properly granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty. Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. *See Schneider v. TRW. Inc.,* 938 F.2d 986, 990-91 (9th Cir.1991). A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).

### B. RETAIL OR SERVICE ESTABLISHMENT

Wireless falls within the retail and service establishment exemption to the FLSA as its *only* business is the retail sales of Cricket Wireless cellular phones and monthly plans. A business qualifies as a "retail or service establishment" if 75 percent of its annual dollar volume of sales of goods or services (or of both) "is not for resale" and "is recognized as retail sales or services in the particular industry." See *Gatto v. Mortgage Specialists of Illinois, Inc.,* 442 F.Supp.2d 529, 537 (N.D.Ill. 2006); 29 C.F.R. §§ 779.411, 779.24. The Department of Labor ("DOL") has

promulgated regulations interpreting the term "retail or service establishment." Gatto, 442 F.Supp.2d at 537. Those regulations provide that the two requirements for qualifying as a "retail or service establishment" — (i) 75 percent of annual sales being not for resale and (ii) 75 percent of annual sales being recognized as retail sales — are distinct. See 29 C.F.R. § 779.322 (explaining that "many sales which are not for resale lack a retail concept and the fact that a sale is not for resale cannot establish that it is recognized as retail in a particular industry"). Alvarado, et. al. vs. Corporate Cleaning Service, Inc., et al. 719 F.Supp.2d 935, USDC N.D. Illinois Eastern Division (2010).

    **i.**    **Wireless was engaged in the making of retail sales of goods or services.**

A business typically satisfies the first requirement if it "sells goods or services to the general public," "serves the everyday needs of the community," "is at the end of the stream of distribution," "disposes its products in 'small quantities'" and "does not take part in the manufacturing process." 29 C.F.R. Section 779.318(a). Here, Wireless's primary purpose was to retail cellular phones and the associated plans. See Affidavit of Omar Salti. Wireless sells cellular phones and the associated plans to the general public. Id. Wireless sells singular phones to individuals but does not manufacture or do any type or repair to the phones. Id.

According to the DOL's regulations, a sale of services is for resale "where the seller knows or has reasonable cause to believe will be resold." 29 C.F.R. § 779.334. Wireless has no reason to believe that any cellular phone would subsequently be resold, in most instances the purchaser buys a wireless plan with the purchase of the phone. See Affidavit. Instead, Wireless sells individual phones to the community at large. The purchaser subsequently purchases a monthly subscription plan. See Affidavit. It is clear that Wireless's only business is the retail sales of phones and plans to the general public.

> ii. **75% of Wireless's sales of goods or services are recognized as retail in the wireless cellular phone retail industry.**

Wireless is only able to generate sales upon the following occurrences: 1. Customer comes in to purchase a wireless cell phone; and/or, 2. Customer purchases a Cricket Wireless cellular phone monthly plan.  See Affidavit.  Wireless provides no service or repair.  Id.  Essentially Wireless's only business was in fact, retail sales of cellular phones or retail sales or cellular phone plans.  Id.

> iii. **Wireless's business is recognized as a retail establishment in the Cellular phone industry.**

Wireless does not provide any service other than its retail sale of cellular phones or the associated retail sale of cellular phone plans.  See Affidavit.  It does not repair phones or provide any type of customer service. 29 CFR 779.323 attempts to provide some clarification as to what establishes the retail aspect of the underlying sale or service.  Some situations are clear and present no difficulty. The sale of clothes, for example, belongs to the clothing industry and the sale of ice belongs to the ice industry.  29 CFR 779.323.  Here, there is no dispute that Wireless's business comprises strictly of retail sales.  Wireless does not manufacture phones, write cellular plans or even provide cellular service.  Instead it strictly sold the phones and plans on a retail basis to the public at large.

## C. **WIRELESS ACTED IN GOOD FAITH**

Under § 16(c) of the FLSA, 29 U.S.C. § 216(c), an employer who violates the minimum compensation provisions of the FLSA is liable for both past due wages and, in addition, an equal amount of liquidated damages. The Act, however, allows defendant employers to avoid liability

for failure to pay overtime "if [the defendant] pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the Administrator of the Wage and Hour Division of the Department of Labor. 29 U.S.C. § 259. Section 260 of the Act allows the employer found to be liable for past wages to allege a reasonable, good-faith belief that it was not violating FLSA to avoid liability for liquidated damages. See 29 U.S.C. § 260. To establish good faith, an employer must show more than its subjective state of mind. The regulations provide that "good faith" is an objective test: whether the employer "acted as a reasonably prudent man would have acted under the same or similar circumstances. 'Good faith' Case 1:12-cv-08333-ALC-SN Document 839 Filed 12/18/14 Page 6 of 18 7 requires that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry." 29 C.F.R. § 790.15(a) (citing legislative history).

29 U.S.C. Section 260 "affords district courts discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." Barfield v. New York City Health & Hospitals Corp., 537 F.3d 132, 150 (2d Cir. 2008) (citing 29 U.S.C. § 260). "To establish the requisite subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates of the FLSA and then act to comply with them.'" Id. (citing Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999), modified on other grounds by Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61 (2d Cir. 2003)).

In order to establish the Good Faith defense, Wireless must establish three interrelated elements: (1) that its action was taken in reliance on a ruling of the Administrator, (2) that it was

in conformity with that ruling, and (3) that it was in good faith." See Equal Employment Opportunity Comm'n v. Home Ins. Co., 672 F2d at 263.

Here, Wireless employs an outside bookkeeper/accountant in order to manage the employee hours as well as complying with any F.L.S.A requirements.  Specifically, Wireless employs Danny Andrich Jr., who is the president of Andrich Accounting.  Wireless used a Point of Sale ("POS") management system, provided by Cricket Wireless.  The POS system was also used as a timekeeping system as employees were required to sign in and out of the POS system prior to starting work.  At the end of the workweek, the POS system would send an accounting to Andrich Accounting who would cut a paper check directly to the employee.  Near the end of the subject employees time of employment Andrich Accounting began using a direct deposit system. See Affidavit.

Upon commencement of any proposed employment, the President of Wireless, Omar Salti, would consult Andrich Accounting.  Andrich Accounting established a management system in which Omar was under the impression that Plaintiffs Alisha Simmons and Alphonso Durden fell within the Management Exemption contained within Section 13(a)(1) of the Fair Labor Standards Act as well as the retail sales exemption outlined above.  Prior to making any employment decisions, Omar and Danny consulted the Department of Labor Fact Sheets to assure that the employees fell within the managerial and/or retail sales exemption to the FLSA Overtime Requirements.

### III. CONCLUSION

Plaintiffs' Motion for Summary Judgment should be denied.  First, it has provided no proof that Jerry Phillips was every employed by Defendants.  Second, The Defendants were a

retail establishment and thus the employment at issue is exempt for the remedy Plaintiffs are requesting. Third, Defendants acted in good faith. For the foregoing reasons there are material issues of fact related to whether or not Jerry Phillips was ever employed by Defendant, whether the Plaintiffs were exempt for overtime, and, whether or not Defendant acted in good faith.

                                                      Respectfully submitted,

                                                    __/s/ Wesley A. Johnston__
                                                    Wesley A. Johnston (0061166)